### BECKER *v.* DUNAGIN.

#### [74 South. 275, Division B.]

REFORMATION OF INSTRUMENTS. *Deeds. Agreement. Fraud.*

> Where in negotiations for the sale of a house, nothing was said about the land to be embraced in the deed, and the buyer undertook to prepare a deed in conformity to their agreement but in doing so included more land than the parties intended, the vendor being ignorant and unable to understand the description in the deed, in such case the failure of the buyer to point out to the seller, on the ground, the limits and boundaries discribed in the deed was such a fraud as authorized a reformation of the deed, although the deed was read over to the vendor before signing.

APPEAL from the chancery court of Jones county.

HON. SAM WHITMAN, Chancellor.

Bill by Sophie Beckner against W. A. Dunagin. From a decree for defendant, complainant appeals.

The facts are fully stated in the opinion of the court.

*Shannon & Schauber,* for appellant.

Counsel in their brief, as they did in the lower court lay great stress on the fact that appellant and her daughter both read the deed that had been prepared before appellant executed it. This same fact occurred in the case of *Howell* v. *Gibson, supra,* where the Howells were unfamiliar with land descriptions, and did not know of the

fraud practiced on them until after the deed was executed and delivered, and this court held in that case that complainants were entitled to have the deed reformed.

We do not think this court will hold that because appellant and her daughter, who testified that they were unfamiliar with land descriptions, are bound by this deed especially when it is written in "metes and bound." The appellant, in her testimony states that on hearing the deed read to her, and on reading it herself, the deed said nothing about the alley, and as no mention of the alley was made in the deed, she of course, did not think the deed included the alley, which is certainly a most reasonable explanation as to why she did not think the deed contained the alley. It is clearly established that she did not agree to sell the alley to appellee, nor did appellee agree to buy the alley from her; then if the alley is included in the deed, which the testimony shows, it was certainly in there by fraud, accident or mistake, and appellee denies that it was in there by accident or mistake, so there is no other way that it could have been put in there except by fraud, as is clearly proven.

The case of *Jones v. Jones*, reported in 88 Miss. on page 784, is not applicable to the case now before the court. In the first place the facts in that case were in dispute which is not so in this case, and Justice TRULY, who delivered the opinion states his reason therefor in the first two sentences of his opinion, as follows:

"We find ourselves unable to agree with the chancellor in his conclusion that the deed from appellee to appellant should be reformed. It appears to our mind conclusive that the real intention of the parties was that appellant should have ninety acres of land."

Surely this court cannot say from this record that it was the intention of the parties that appellee should have the ten-foot strip of alley, which separated the one house he purchased, from the four houses that appellant still owned, and which strip or alley, appellant testifies is absolutely necessary for the enjoyment of her remaining four houses.

The case of *Christian* v. *Green,* 45 So. 425, with which counsel closes their brief with a quotation from Mr. Justice MAYES, is a case that was decided on the facts also, and which this court disagreed with the chancellor in the lower court on the fact, but is not applicable to this case, where there is no dispute as to the facts, and only a question of law is involved. The lower court holding that on testimony submitted by complainant she was not entitled to the relief prayed for in her bill of complaint.

There is more at stake in this suit than the mere value of a ten-foot strip of land. There is a principle involved. Will the courts of the country take land from a grantor that she never sold, nor agreed to sell, and for which she received no consideration whatever, merely because the grantor is unable to understandingly read, or understand when read to her, the description worded in "metes and bounds." This is really the only question involved in this suit. We submit that complainant is not estopped, for she had a perfect right to rely on appellee's preparing the deed correctly, and not practicing a fraud on her as appellee did. Even if the law was otherwise, which we submit it is not, we do not believe the court should deny complainant the relief sought in her original bill of complaint.

The court should reform the deed that appellee had her to execute, so as to return to complainant the ten-foot strip, or alleyway, which is necessary to the enjoyment of her four houses, which she did not sell, or agree to sell appellee.

We think that this case is on all fours with the case of *Howell* v. *Gibson, supra,* and, relying on that case, we do not believe that this court will hold that appellant cannot have her deed reformed so as to express the true agreement of the parties at the time they made the trade. It did not include the sale of the ten-foot strip of land, or alleyway, which is the land involved in this litigation.

*Street & Street,* for appellee.

The defendant read the deed to complainant, she read it herself and her daughter read it to her. She had it in her possession for two days, and was at perfect liberty to submit same to her attorneys, or to anyone else, for examination and approval; and this was her duty, if she did not understand it. The exercise of the slightest care and caution on her part, while the deed was in her possession for two days, could and would have satisfied her mind beyond doubt that the deed either was or was not correctly written. In this connection, we beg to quote from *Wilczinskin* v. *Railroad,* 66 Miss. 610, wherein the court says: ''Courts cannot impose on one contracting party the burden of an agreement into which he did not intend to enter, to protect the other in supposed rights he intended to reserve or acquire when the exercise of the slightest care would have discovered that by his contract as written such rights were denied.''

The complainant failed in that degree of proof required by law. This court, in *Jones* v. *Jones,* 88 Miss. 787 speaking through Justice TRULY, ''adheres to the arbitrary, but salutary rule which requires a party seeking a reformation of a deed, the recitals of which are definite and unambiguous to establish, not only by the preponderance of the testimony, but practically to the exclusion of every other reasonable hypothesis, that mutual mistake, fraud or error occurred in the making of the instrument sought to be reformed.''

We can close in no better way than in the language of Mr. Justice MAYES, speaking for this court, in *Christian* v. *Green,* 45 So. 425. ''Fraud is not to be presumed and where it is sought to cancel so formal an instrument as a deed or deed of trust on the ground of fraud, the proof of fraud should be clear and convincing. Contracts of this nature are not to be lightly swept aside.'' Trusting in the validity of these contracts, multiplied numbers of busi-

ness transactions are conducted, and when a deed or deed of trust is executed, the solemn formalities required by the law are required for the very purpose of making the contracts binding and requiring the parties executing them to inform themselves of their nature and contents, and they should stand, unless by clear proof it is shown that they were procured by fraud and misrepresentation.''

COOK, P. J., delivered the opinion of the court.

Mrs. Becker, appellant, was the owner of a trangular piece of land situated in the city of Laurel, on which she had erected five dwelling houses, four of which faced east on the street, the west line marked by fence; the fifth faced west. It appears that she had divided the land by an alley ten feet wide, thus making two blocks. In the eastern block was situated a frame dwelling occupied by appellant and used as a boarding house, and this house is the subject of this controversy. After some negotiations this dwelling house was sold to appellee. The record discloses that nothing was said about the amount of land to be embraced in the deed, but in all the negotiations the object of the sale referred to was the house. It seems that the interested parties reached an agreement on the terms of the sale, when the undisputed proof shows that something was said about the preparation of the deed, and appellant, an aged woman of German extraction and of small knowledge of the English language, asked appellee if it would be necessary to employ a lawyer to draft the deed, and appellee replied that it would not be necessary, that his bookkeeper was well qualified to prepare the deed, and her would have the deed prepared at no expense to her, which was a rash promise as this lawsuit demonstrates. So it was, the old lady intrusted to the appellee the preparation of the deed, which was afterward read to and signed by her. The deed of conveyance described the land conveyed by metes and bounds, beginning at a selected

starting point, and ignoring the fence lines, which was Greek to an ordinary layman and signified nothing—and who would not know whether or not it correctly described the lot of land she had agreed to sell appellee. But it appears that she signed, acknowledged and delivered the deed. Things rocked along and all was well, until appellee. proceeded to take visible possession of the dirt called for by his deed. It will be recalled that appellant had divided her triangular piece of land, leaving an alleyway between. This was done so that she could conserve her interests and utilize to the utmost the entire property, and leave an outlet to each tenant of houses to be there-after built, both from the front and from the back. It seems to be perfectly manifest that the closing of this alley at either end would seriously impair the value of all the lots embraced in the entire tract, and it also seems equally manifest that no reasonable man could have believed that she intended to make a conveyance which would accomplish this result. So, when appellee proceeded to assume possession and ownership of that portion of the alley at the rear of his lot the trouble began, and the promise to have the deed so as to make it conform to the intention of the contracting parties. The above statement of facts is the case reflected by this record trimmed of all details.

The bill charges fraud in the preparation of the deed, but the chancellor denied the relief sought and dismissed the bill, presumably because the proof did not authorize a a belief that appellee had been guilty of any actual fraud. It was shown that the description in the deed was clear, specific, and definitely described the land which Mrs. Becker was conveying when she signed the deed. We take an entirely different view of the matter, if the evidence is to be believed, and it is undisputed. We think, when Mr. Dunagin assumed the task of preparing this deed and guaranteeing its efficiency to record the trade, under all the facts, he should have pointed out on the ground the limits and boundaries of the lot described in the deed; for it seems manifest that any good business man, as Mr. Duna-

gin is shown to be, could, not have thought that this woman knew that she was not only selling him the house but was also making it possible for him to acquire, if he so desired, the balance of her holdings at his own price, or, at least, upon terms much to the advantage of a purchaser owning a part of the alley.

For these reasons, we think the decree should have been for the complainant.

*Reversed and remanded.*